[No. A026674. First Dist., Div. Four. Sept. 24, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
FAKRI NASSIF ABDEL-MALAK, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976(b) and 976.1, this opinion is certified for publication with the exception of part V.

COUNSEL

David Weintraub, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Linda Ludlow and Morris Beatus, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CHANNELL, J.—After a court trial, appellant Fakri Nassif Abdel-Malak was convicted of robbery (Pen. Code, § 211)[1] and sentenced to state prison.[2] He appeals, contending that he was deprived of (1) due process of law; (2) his right to a speedy trial; and (3) the effective assistance of counsel at trial. He also contends that (4) the trial court erred in admitting evidence of an unrelated robbery to prove identity. (Evid. Code, § 1101, subd. (b).) We reject these contentions and affirm the judgment.

## I. FACTS

### A. *The Charged Crime*

Cheri Davis was working as an assistant manager of a women's clothing store in Fairfield on November 24, 1982, when a man entered the store at approximately 8:30 p.m., a half hour before closing time. There were no customers in the store and only one other employee, Arlene Ordonio. The man, whom she later identified as Abdel-Malak,[3] approached the cash register and asked for change for a $1 bill. As Davis placed the change in his hand, the man said "'Leave the drawer open. This is a holdup.'" At his direction, she handed him the money from the drawer, that underneath the drawer, and that in the safe. Although she did not see a weapon, Abdel-Malak kept one hand underneath a pullover sweater vest and "his hand was cocked to indicate that he had something there." Before leaving the store, Abdel-Malak said that he had a partner waiting outside who was watching the store, and if they "attempted to do anything within 15 minutes the store

---

[1]All statutory references are to the Penal Code, unless otherwise indicated.

[2]At the time of trial, Abdel-Malak had been previously committed to state prison for other crimes. For the present offense, he received a one-year consecutive term. (See § 1170.1.)

[3]Davis described the man as five feet five inches or five feet six inches and about twenty-five to thirty years old. She could not "say exactly what his nationality was." He had a full black beard, shoulder-length black hair, and wore tinted wire-rimmed glasses.

wouldn't be there." It was later determined that $803.99 was missing from the day's receipts.

At 8:46 p.m., "Frank Malk" registered at the Holiday Inn in Fairfield. He gave a vehicle license number of 1EKP186. The Department of Motor Vehicles had this Datsun registered to Abdel-Malak. He checked out of the inn two days later on November 26, 1982.

## B. *The Uncharged Crime*

Lee Ann Scheuring was working as an assistant manager at a Pizza Hut in Sacramento on November 26, 1982, at approximately 10:30 p.m. when a man entered the restaurant an hour and a half before closing time. There were no customers in the restaurant, only a waitress. The man, whom she later identified as Abdel-Malak,[4] walked up to the counter and asked for change for a $5 bill. As she proceeded to make change, the man told her that this "was a robbery." He told Scheuring to give him all the money in the cash register; she did so. Disbelieving that she had given him all the money, he repeated his demand; she showed him that there was no more money in the drawer. He directed her to "get the rest of the money from underneath." He then told her, "let's go back in the office and get the rest of the money." She explained that the money was kept in the safe under the cash register and she was unable to open it. During this time, Abdel-Malak kept his right hand concealed in his jacket pocket. From the way he kept this hand "close to his body," Scheuring got the impression that he had a gun. Before leaving, he told the two women that he had a friend watching the restaurant, and that if either of them telephoned the police within 15 minutes, "they would blow it up and there would be no Pizza Hut tomorrow." Defendant drove away in a white Datsun that had been parked in front of the restaurant. She telephoned the police. About 20 minutes later, police stopped Abdel-Malak in Sacramento.

## C. *Procedural History*

Abdel-Malak was charged in Solano County with the November 24 robbery on December 15, 1982. In June 1983, he pled guilty in Sacramento County to the Pizza Hut robbery, three other robberies, and two counts of sexual battery. He was sentenced to state prison on October 26, arriving on November 4.

---

[4]Scheuring described the man as about 5 feet 10 inches, and between 30 and 35. The man had collar-length black hair, brown eyes, a beard and a moustache, and wore tinted gold-rimmed glasses. He appeared to be of "Arab descent."

On November 29, 1983, the Solano County District Attorney received Abdel-Malak's demand pursuant to section 1381[5] to bring him to trial on the Solano County complaint. The district attorney responded on December 8 that it could not locate Abdel-Malak's outstanding warrant and requested further information about the offense. On December 20, Abdel-Malak provided the requested information by letter. On the same date, the district attorney prepared an order directing that he be brought to Solano County for arraignment. This order was actually obtained on December 28. On January 18, 1984, he was released from prison and delivered to Solano County authorities. He waived arraignment on January 24. Counsel had been appointed for him by this time.

On February 3, the preliminary examination was conducted. After the first witness, Arlene Ordonio, was sworn, defense counsel requested that prospective witnesses be excluded from the courtroom. The court ordered it done. However, Cheri Davis was sitting in the courtroom before the exclusion order and saw Abdel-Malak when he entered. Ordonio testified, saying that she was not certain that she could identify Abdel-Malak as the clothing store robber. Before Davis was called to testify, defense counsel moved for a continuance in order to conduct a physical lineup, because the photographs from an earlier photographic lineup shown to Davis had been loaned to another officer and later misplaced. The request for a physical lineup was denied as untimely, although defense counsel stated that he had just learned of the fact that the photographs were lost. Davis then testified and positively identified Abdel-Malak as the man who robbed her. She indicated at one point that she remembered him independent of the photographic lineup. Abdel-Malak was held to answer for the November 24 robbery.

On February 10, the information was filed. Abdel-Malak was arraigned on February 14, pled not guilty, and specifically refused to waive time for trial. The prosecutor urged a February 27 trial date be set, but at defense counsel's request, trial was set for February 21. When defense counsel later advised the prosecutor that he was not prepared for trial, the prosecutor

---

[5]Section 1381 provides: "Whenever a defendant has been convicted . . . and . . . sentenced to and has entered upon a term of imprisonment in a state prison . . ., and at the time of the entry upon such term of imprisonment . . . there is pending, in any court of this state, any other . . . complaint . . . wherein the defendant remains to be sentenced, the district attorney of the county in which such matters are pending shall bring the same defendant to trial . . . within 90 days after such person shall have delivered to said district attorney written notice of the place of his imprisonment . . . and his desire to be brought to trial . . . unless a continuance beyond 90 days is requested or consented to by such person, in open court, and such request or consent entered upon the minutes of the court. . . . In the event such action is not brought to trial within the 90 days as herein provided the court in which such action is pending must . . . dismiss such charge. . . ."

moved to continue the trial until February 27, the 90th day after receipt of Abdel-Malak's section 1381 demand. The request was granted.

On February 23, Abdel-Malak moved to suppress evidence (§ 1538.5) and to dismiss the information on the ground that the delay in bringing him to trial denied him his constitutional right to a speedy trial (§ 995). The motions were heard and denied on the following day. At this hearing, defense counsel again indicated that his client would not waive time.

February 27, 1984, was the first day of trial. Defense counsel informed the trial court that he was unprepared to proceed to trial and that Abdel-Malak would not waive time. The court ordered trial to proceed. Evidence of the November 26 uncharged robbery of the Pizza Hut restaurant was introduced at trial on the November 24 robbery. The defense called no witnesses and presented no evidence. Abdel-Malak was convicted of the November 24 offense after a court trial. He filed a timely notice of appeal.

## II. SPEEDY TRIAL

Abdel-Malak first contends that the trial court violated his constitutional right to a speedy trial. (U.S. Const., 6th and 14th Amends.; Cal. Const., art. I, § 15.) ■ The United States Constitution's guarantee of a speedy trial begins to run on the filing of an accusatory pleading. (*United States v. Marion* (1971) 404 U.S. 307, 320 [30 L.Ed.2d 468, 478, 92 S.Ct. 455]; *Blake v. Superior Court* (1980) 108 Cal.App.3d 244, 251 [166 Cal.Rptr. 470].) ■ The court must balance the length of the delay, the reason for the delay, the assertion of a right to a speedy trial, and the prejudice to the defendant to determine if there has been a federal constitutional violation. (*Moore v. Arizona* (1973) 414 U.S. 25, 26 [38 L.Ed.2d 183, 185-186, 94 S.Ct. 188]; *Barker v. Wingo* (1972) 407 U.S. 514, 530 [33 L.Ed.2d 101, 116-117, 92 S.Ct. 2182]; *Blake v. Superior Court, supra,* 108 Cal.App.3d at p. 251.)

■ The information was filed February 10, 1984, and trial began February 27, 1984. Considering the pretrial matters heard in this case, this is not a lengthy delay. Abdel-Malak does not suggest any improper motive for this 17-day delay, nor has he demonstrated any prejudice resulting from it during this period. As such, we find no denial of his federal constitutional right to a speedy trial. (*Blake v. Superior Court, supra,* 108 Cal.App.3d at p. 252.)

■ Under the state Constitution, the right to speedy trial attaches when the defendant is arrested or the complaint is filed. ■ A presumption of prejudice arises on expiration of a statutory period after an information or

indictment is filed; until that time, any violation of the defendant's speedy trial right depends on a balancing of the prejudicial effect of the delay and the justification for the delay. (*Scherling* v. *Superior Court* (1978) 22 Cal.3d 493, 504 [149 Cal.Rptr. 597, 585 P.2d 219]; *People* v. *Lawson* (1979) 94 Cal.App.3d 194, 198 [156 Cal.Rptr. 226].) Abdel-Malak was brought to trial within the statutory 90-day period (§ 1381); therefore, he must establish prejudice to prove a speedy trial violation.

Abdel-Malak contends that if Solano County authorities had diligently pursued this case, the photographs used in the photographic lineup would not have been lost. This contention ignores the fact that the Solano County police lent the photographs in early December 1982 and they were lost in a matter of days, *before* he was charged with this offense by complaint on December 15 and his right to speedy trial attached. As such, his state constitutional claim of a speedy trial violation also fails.[6]

### III. Due Process

Next, Abdel-Malak contends that the manner in which he was brought to trial after his section 1381 demand deprived him of due process. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 15.) He contends that, while the normal 90-day period is adequate for trial preparation, delays in bringing him to Solano County hampered his ability to prepare a defense.

This contention has several major flaws. First, while the trial court heard defense counsel explain the difficulties of preparing the case for trial, it did not find that defense counsel was actually unprepared for trial. Second, Abdel-Malak establishes no prejudice as a result of going to trial on the 90th day. He claims that his trial counsel did not have an adequate opportunity to interview prosecution witnesses and check out the preliminary hearing testimony, but it was clear at the preliminary hearing—almost a month earlier—who these witnesses would be and what testimony they gave. In fact, defense counsel used the preliminary hearing transcript at trial in an attempt to discredit a key witness. Abdel-Malak also contends that his trial counsel did not have an opportunity to thoroughly research the issue of the lost photographic lineup. However, this evidence was not used at trial and the eyewitness who positively identified Abdel-Malak as the clothing store robber testified that her identification was based on "the events that happened when the store was robbed." Third, the trial court gave Abdel-Malak the opportunity to waive his section 1381 rights; when he declined to do so,

---

[6]He also contends that the manner in which Solano County authorities brought him to trial *after* his section 1381 demand constituted speedy trial prejudice. However, his complaint is actually that the manner in which he was brought to trial was *too* speedy, not too slow. As such, this claim of prejudice is actually a due process claim. (See pt. III, *post.*)

the court ordered trial to begin. The trial court properly allowed the defendant, rather than defense counsel, to choose whether the trial should proceed.

The trial judge specifically found that Abdel-Malak was not being "railroaded" through the system when he ruled on the pretrial motions only three days before trial. Without a showing of prejudice to Abdel-Malak, we must agree with the trial court. There was no due process violation.

Our dissenting colleague states that Abdel-Malak was forced to go to trial with an unprepared counsel. There is nothing in the record, or in anything the trial judge said, leading us to that conclusion other than trial counsel's repeated statements that he wasn't ready. We also find no support for the dissent's statement the attorney had had no opportunity to became acquainted ". . . with the warts and wrinkles of the case at hand . . . ." The dissent is premised on a conclusion of unpreparedness when no adequate showing was made to the trial judge.

The dissent concludes by comparing the plight of Abdel-Malak to a ticket buyer who was forced to fly with a pilot who had not had the time to prepare for the flight. Instead of this fanciful analogy, we see an example of a defendant who has chosen as a trial tactic to force the trial judge to make a ruling that will allow him to argue on appeal either that he has been denied his statutory right to a speedy trial, or that he was deprived of his constitutional right to a prepared attorney. There is no reason an appellate court should conclude on this record the trial judge made the wrong decision.

## IV. Incompetence of Counsel

### A. *Standard*

Not surprisingly, Abdel-Malak next contends that his conviction must be reversed because he was deprived of the effective assistance of counsel (U.S. Const., 6th and 14th Amends.; Cal. Const., art. I, § 15) because his trial counsel failed to make section 995 and *Hitch* motions in superior court and because he was unprepared for trial. ■ Abdel-Malak bears the burden of establishing that his trial counsel failed to act in a manner to be expected of a reasonably competent attorney acting as a diligent advocate, *and* that counsel's acts or omissions resulted in the withdrawal of a potentially meritorious defense. (*People* v. *Pope* (1979) 23 Cal.3d 412, 425 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1].) ■ When the claim of ineffective assistance is based on acts or omissions not amounting to the withdrawal of a potentially meritorious defense, then the defendant must show "that his counsel failed to perform with reasonable competence and

that it is reasonably probable a determination more favorable to the defendant would have resulted in the absence of counsel's failings." (*People* v. *Fosselman* (1983) 33 Cal.3d 572, 584 [189 Cal.Rptr. 855, 659 P.2d 1144].)

B. *Failure to Move to Set Aside the Information*

■ The first assignment of incompetency is defense counsel's failure to move to set aside the information in superior court on the ground that Abdel-Malak was deprived of his right to a lineup during the preliminary examination. (§ 995.) The magistrate's refusal to allow a defense lineup during the preliminary examination was brought to the trial court's attention in conjunction with Abdel-Malak's motion to suppress an in-court identification. The magistrate had ruled that the request was untimely. The trial court, ruling on the motion to suppress, found that the issue was moot because Davis, the witness who would have been asked to identify the clothing store robber at a defense lineup, had already seen Abdel-Malak at the preliminary hearing. Davis testified at the preliminary hearing that she remembered Abdel-Malak independent of the photographic lineup. At trial, she testified that her identification was based on the events of the night of the robbery. When asked whether her initial hesitation at the preliminary hearing was caused by any uncertainty about her identification of Abdel-Malak as the robber, she replied: "No. I was certain."

In an appropriate case, due process requires that an accused, on timely request, be afforded a pretrial lineup in which witnesses to the alleged offense may participate. However, the right to a lineup arises only when eyewitness identification is shown to be a material issue and there exists a reasonable likelihood of mistaken identification that a lineup could tend to resolve. (*People* v. *Baines* (1981) 30 Cal.3d 143, 147-148 [177 Cal.Rptr. 861, 635 P.2d 455]; *Evans* v. *Superior Court* (1974) 11 Cal.3d 617, 625 [114 Cal.Rptr. 121, 522 P.2d 681].) The *possibility* of a mistaken identification exists in any case; however, given Davis' testimony at the preliminary hearing and the trial, there is no "reasonable *likelihood* of mistaken identification" necessary to support the granting of a motion for a pretrial lineup. As such, defense counsel was not incompetent for failing to move to set aside the information (§ 995) on this ground. (*People* v. *Fosselman, supra,* 33 Cal.3d at p. 584; *People* v. *Pope, supra,* 23 Cal.3d at p. 425.)

C. *Failure to File a Hitch Motion*

■ Next, Abdel-Malak contends that his trial counsel was incompetent because he failed to file a *Hitch* motion to suppress the lost photographic lineup. (See *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361].) However, the photographs and the identification made as a result

of this lineup were not introduced at trial. As such, there was no prejudice resulting from failure to make this motion. In response to questioning on cross-examination, Davis admitted that the longer she looked at Abdel-Malak in court, the more positive she became about her identification of him, based in part on the photographic lineup.

Abdel-Malak also suggests that Davis's in-court identification should also have been suppressed under *Hitch*. This ignores the fact that Davis's in-court identification was expressly based on the events of the night of November 24; therefore, it was not the result of the photographic lineup.

### D. *Failure to Adequately Prepare for Trial*

 As his final claim of incompetence error, Abdel-Malak contends that he was denied effective assistance of counsel because his trial counsel was not adequately prepared for trial. At the beginning of trial, defense counsel explained that he had not had sufficient time to prepare for trial. Although the defense called no witnesses and presented no evidence, defense counsel filed and vigorously argued several pretrial motions just days before trial, hoping to exclude key evidence; argument on these motions comprises almost 70 pages of transcript. At trial, defense counsel repeatedly objected to the admission of evidence and made motions to strike. He rigorously cross-examined each witness and repeatedly attempted to impeach the credibility of Davis's identification. That he was ultimately unsuccessful in obtaining an acquittal for his client does not make him incompetent. Defense counsel's conduct of the case meets the standard of a reasonably competent attorney. (See *People* v. *Pope, supra,* 23 Cal.3d at p. 425.) There was no incompetence of counsel.

### V. EVIDENCE OF SUBSEQUENT CRIME*

. . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Anderson, P. J., concurred.

**POCHÉ, J.,** Dissenting.—This case illustrates the tensions between defendant's statutory right to a speedy trial (Pen. Code, § 1381)[1] and his Sixth Amendment right to a competent and adequately prepared counsel. Who wins when an admittedly unprepared counsel seeks a continuance in order

*See footnote, *ante,* page 359.
[1]All further statutory references are to the Penal Code.

to prepare in the face of his client's refusal to waive time? My colleagues suggest the defendant's choice to go forward is controlling even though they see his refusal to waive time as only a trial tactic. The rule becomes then—at least in section 1381 cases—that a defendant who insists on his statutory right to a speedy trial waives his Sixth Amendment right to adequately prepared counsel.

Instead I would follow the rule set forth by the California Supreme Court in *Townsend* v. *Superior Court* (1975) 15 Cal.3d 774 [126 Cal.Rptr. 251, 543 P.2d 619], involving section 1382. There—just as here—the defendant at every stage of the proceedings refused to waive time or join his counsel's various requests for a continuance. The question before the Supreme Court was: "[D]id the consent of petitioner's counsel to the various extensions of time bind petitioner?" Just as succinctly Justice Richardson's opinion for the majority answered: "We have concluded, subject to certain limitations, that consent of counsel alone without that of the client, satisfies section 1382, subdivision 2." (At p. 780.)[2]

All of *Townsend*'s reasoning appears to be equally applicable to the section 1381 context and I would so apply it. Such a rule would remove from the trial courts any possibility of game playing by defendants, and would give clear guidance to trial courts in the often difficult context of section 1381 time problems.

The remaining question is whether the error in honoring defendant's demand requires reversal.

The majority opinion finds—on the basis of absolutely no proof—that defendant was engaging in "a trial tactic to force the trial judge to make a ruling that will allow him to argue on appeal either that he has been denied his statutory right to a speedy trial, or that he was deprived of his constitutional right to a prepared attorney." (Majority opn., *ante*, p. 368.) That determination, with all due respect, is a judicial hunch never raised below by anyone. One might apply the description used elsewhere in the majority opinion to this bit of conjecture: "fanciful." (Majority opn., *ante*, p. 368.) Such a determination as this court makes obviously would apply to the defendant in *Townsend*, a reality that strangely seems to have been overlooked by the entire California Supreme Court. Additionally it must be

[2]Of course, if counsel's motivation for the continuance is not in the best interests of his client, counsel may not waive his client's right to a speedy trial under section 1382. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 566-569 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 955]; accord *Owens* v. *Superior Court* (1980) 28 Cal.3d 238, 250, fn. 12 [168 Cal.Rptr. 526, 617 P.2d 1098]; *Eshaghian* v. *Municipal Court* (1985) 168 Cal.App.3d 1070, 1080 [214 Cal.Rptr. 712].)

emphasized that when such game playing is actually engaged in by a defendant the rule of *Townsend, supra,* ends the game quickly: counsel's request controls over his client's objections. It is that simple rule that the majority refuses to apply.

Coupled with its "trial tactic" rationale the majority opinion examines the record and glowingly characterizes counsel's performance—e.g., counsel "vigorously argued several pretrial motions" and "rigorously cross-examined each witness . . . ." That description is accurate so far as it goes but must be contrasted with the equally descriptive reality that "the defense called no witnesses and presented no evidence," (majority opn., *ante,* p. 370) because counsel was unprepared to proceed to trial.

But analysis of performance of counsel is relevant only to the question of counsel's competency. Instead what is challenged here is not that defendant was denied his Sixth Amendment right to competent counsel but that he was denied his Sixth Amendment right to adequately prepared counsel. Whether or not counsel performed well when viewed in hindsight is irrelevant when the reviewing court is faced with an admittedly unprepared counsel. Under such circumstances—those of the instant case—the only permissible course of conduct for the reviewing court is to reverse the judgment and remand the cause so that the defendant can be tried fairly with the aid of a prepared attorney. (See, e.g., *People* v. *Fontana* (1982) 139 Cal.App.3d 326, 334 [188 Cal.Rptr. 612]; *Hughes* v. *Superior Court* (1980) 106 Cal.App.3d 1, 4-5 [164 Cal.Rptr. 721].) I would follow that course here.

It is, of course, the special talent of many seasoned counsel such as defense counsel here to put on a good show at trial even when they are insufficiently prepared on the facts and/or law of the case at hand. Such counsel can do just what the majority finds trial counsel did here: *vigorously* cross-examine each witness. To that extent, a portion of what a criminal defendant is guaranteed under the Sixth Amendment has been afforded him: he has been given the talents of an experienced—a competent—counsel. Defendant does not deny the talents of his counsel.

It is my understanding that the Sixth Amendment guarantees a criminal defendant not only an attorney with skills but one who has been given the opportunity to become acquainted with the warts and wrinkles of the case at hand so that he or she can use those skills skillfully. Where that time to prepare has been denied, the right to counsel has been denied even though as a result of his skills or seat of the pants talents counsel has put on a good show.

When one buys an airline ticket one expects the aircraft to be flown by an experienced pilot who has had the opportunity to rest sufficiently before

the flight and to become acquainted with the flight plan and expected weather conditions. If instead the ticket buyer really should expect only an experienced pilot who has not had the time to prepare for this particular flight, and if the quality of the pilot's performance and his preparedness will be measured only by the safe arrival of the aircraft, my guess is that air travel will not be a growth industry. My understanding is that both the United States and California Constitutions require at least as much for criminal defendants: the assistance of one who both knows how to try a criminal case and who has had the opportunity to study the case before attempting to try it.

This is dismissed by the majority opinion as a "fanciful analogy" (majority opn., *ante,* p. 368) premised on a conclusion of unpreparedness when no adequate showing was made to the trial judge. As I read the record not only is there an adequate record of unpreparedness, there is overwhelming evidence in that regard, one that was not challenged by either the prosecutor or the trial judge. I suppose that the record is read as inadequate because my majority colleagues choose not to believe defense counsel just as they know that defendant's refusal to waive time was a trial tactic. What the record shows is that defendant was not turned over to Solano County authorities until approximately 50 days after his demand was received by the district attorney's office. The case went from arraignment in municipal court to felony trial in five weeks. It went from arraignment in superior court to felony trial in seven court days. Defense counsel repeatedly and insistently stated to the court that he was unprepared. He told the court that he had not interviewed witnesses, had not spoken with defense investigators or had them check into the testimony given at the preliminary hearing, nor had he had an opportunity to research issues which would be relevant at trial. This continued and detailed showing was never controverted or challenged in any way whatsoever.

For these reasons, I would reverse the judgment so that defendant could be afforded what both the California and the United States Constitutions guarantee him: assistance at trial of an adequately prepared counsel.

Petitions for a rehearing were denied October 22, 1986. Poché, J., was of the opinion that the petitions should be granted. Appellant's petition for review by the Supreme Court was denied December 10, 1986.