Filed 2/9/23; Certified for Publication 3/8/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| KEVIN RAMIREZ, Plaintiff and Respondent, v. THE SUPERIOR COURT OF KERN COUNTY, Defendant and Respondent; DEPARTMENT OF MOTOR VEHICLES, Real Party in Interest and Appellant. | F082588 (Kern Super. Ct. No. BCV-19-102984) **OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Eric Bradshaw, Judge.

Rob Bonta, Attorney General, Chris A. Knudsen, Nancy G. James, and Lorinda D. Franco, Deputy Attorneys General, for Real Party in Interest and Appellant.

Middlebrook & Associates and Richard O. Middlebrook for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

-ooOoo-

Real Party in Interest and appellant California Department of Motor Vehicles (DMV) appeals from a judgment granting plaintiff and respondent Kevin Ramirez's petition for writ of mandate (judgment). We modify the judgment, affirm it as modified, and remand to the trial court with directions.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Ramirez is Arrested for Driving Under the Influence

On June 25, 2018, at approximately 1:08 a.m., Bakersfield Police Department (BPD) received reports of an assault with a deadly weapon that occurred at River Walk Park in Bakersfield California. One individual reporting the incident described the suspect(s) as fleeing southbound in a black Toyota occupied by two Hispanic males and a Hispanic female. Another reporting individual described the suspect(s) as fleeing in a black, four door Ford Ranger pickup traveling southbound on Buena Vista Road.

According to his supplemental report, BPD Officer Van Dyke was dispatched at 1:10 a.m. and responded to the call. As he travelled northbound on Buena Vista Road, he noticed a black, four door truck speeding southbound on Buena Vista Road. Believing it might be the suspect's vehicle, Officer Van Dyke turned his vehicle onto southbound Buena Vista Road and initiated an "investigatory traffic enforcement stop" of the vehicle which Officer Van Dyke described as a black "2001 Ford F-150, 4 door, [with] lowered suspension." The truck was driven by Ramirez.

In his supplemental report, Officer Van Dyke also stated Ramirez "displayed symptoms of being intoxicated. He had red watery eyes, slurred speech, and the odor of an alcoholic beverage emitting from his breath and person." When Ramirez stepped out of his vehicle, Officer Van Dyke "observed [Ramirez] was unsteady on his feet."

Ramirez "was ruled out as a suspect" in the River Walk Park assault investigation. However, another BPD officer, Officer Reynolds, arrived at the scene and commenced investigating whether Ramirez had been driving under the influence (DUI). Other BPD officers also responded to the scene.

2.

Officer Reynolds observed Ramirez "display the objective symptoms of being impaired by an alcoholic beverage" including "watery eyes, slightly slurred speech …, an unsteady gait as he was slightly swaying while standing …, and an odor of an alcoholic beverage about his person."

According to Officer Reynolds's report, Ramirez refused a request he comply with the investigation and "perform a series of standardized field sobriety tests." Upon Ramirez's refusal, Officer Reynolds reported he gave Ramirez the "Preliminary Alcohol Screening test (PAS) admonishment," as follows:

> "I am requesting that you take a preliminary alcohol screening test to further assist me in determining whether you are under the influence of alcohol. You may refuse to take this test; however, this is not an implied consent test and if arrested, you will be required to give a sample of your blood or breath, for the purpose of determining the actual alcoholic and drug content of your blood."

Officer Reynolds reported that Ramirez continued in his refusal and was placed under arrest for violating subdivision (a) of Vehicle Code section 23152 – DUI.[1] Officer Reynolds then took Ramirez to Kern Medical "to obtain an evidential blood sample."

According to Officer Reynolds's report, another BPD officer, Officer Diaz attempted to obtain Ramirez's cooperation with the blood draw, but Ramirez would not consent and only stated, " 'I want my lawyer.' " Officer Reynolds's report indicates Officer Diaz provided Ramirez with the "Watson Advisement[2] pursuant to CVC

---

[1] Vehicle Code section 23152 provides, in part: "(a) It is unlawful for a person who is under the influence of any alcoholic beverage to drive a vehicle. [¶] (b) It is unlawful for a person who has 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle…. (Veh. Code § 23152, subds. (a) & (b).)

[2] Per Officer Reynolds's report, the Watson Advisement given was, as follows: "You are hereby advised that being under the influence of alcohol or drugs, or both, impairs your ability to safely operate a motor vehicle. Therefore, it is extremely dangerous to human life to drive while under the influence of alcohol or drugs, or both. If you continue to drive while under the influence of alcohol or drugs, or both, and, as a result of that driving someone is killed, you can be charged with murder. Do you understand?"

[California Vehicle Code section] 23593(a)" and states, "Officer Diaz told me, he observed Ramirez look at him as he read the advisement; but when asked if he understood, Ramirez only raised his eyebrows without providing a verbal response."

Officer Reynolds obtained a search warrant authorizing the blood draw which was completed at 4:00 a.m. The blood vials were later booked into evidence at the BPD property room.

Officer Reynolds took custody of Ramirez's driver's license and "provided him with a copy of his DMV 367 – Order of suspension/revocation" which advised Ramirez his driver's license "will be suspended or revoked effective 30 days from the issue date" of the order. The order also advised Ramirez of his right to request a hearing on the matter within 10 days of his receipt of the order and that "[t]he suspension or revocation will not be stayed (delayed)" unless a hearing is timely requested. (Bold type and italics omitted.)

## II. Ramirez's Driver's License is Suspended by DMV

On June 28, 2018, three days following Ramirez's arrest, his counsel wrote the Bakersfield Driver Safety Office of DMV to request an "in person [Administrative Per Se (APS)] Hearing" and "discovery pertaining to" Ramirez's arrest. The letter "confirm[ed] that [the DMV] will place a 'stay' on the suspension of [Ramirez's] license pending the outcome of the hearing."

On July 12, 2018, DMV confirmed the suspension of Ramirez's license would be stayed pending the APS hearing and provided Ramirez's counsel with a temporary license for Ramirez's use in the interim period.

On December 20, 2018, Ramirez's counsel forwarded "his reciprocal discovery" to the DMV hearing officer (hearing officer) which included CAD records and two audio CDs of the CAD radio transmissions.[3]

---

[3] The term CAD commonly refers to the "Computer-Aided Dispatch" system utilized by law enforcement to process, communicate, and respond to 911 calls. (See

The APS hearing went forward on July 11, 2019. The hearing officer noted, "the scope of [the] hearing is limited to the following issues in accordance with Section 13558 of the California Vehicle Code. [¶ 1] Did the officer have reasonable cause to believe that [Ramirez] had been driving a motor vehicle in violation of Section 23152 or 23153 of the Vehicle Code? [¶ 2] Was [Ramirez] lawfully arrested? [¶ 3] [W]as [Ramirez] told that if he refused to submit to a chemical test or failed to complete a chemical test that his driving privilege would be suspended or revoked for two – suspended for one year or revoked for two or three years? [¶ 4] And did [Ramirez] refuse to submit or fail to complete a chemical test after being requested to do so by a peace officer?"

The hearing officer, on behalf of DMV, marked, moved, and received into evidence Exhibit 1 – the "Age 21 and Older Officer's Statement" and the "Probable Cause Statement" concerning Ramirez, dated June 25, 2018, and completed by Officer Reynolds; and Exhibit 2 – Ramirez's driving record printout. At that point, the hearing officer indicated DMV had "no further evidence to present" and called on Ramirez's counsel to present his case.

Ramirez's counsel marked and moved into evidence Exhibit A – the arrest report and related officer reports and statements; and Exhibit B – the CAD logs. Thereafter, Ramirez's counsel argued, among other things, the arrest report included the name of another individual in one area – suggesting the report had been cut and pasted; the reports of the suspects and their vehicle did not match Ramirez and his vehicle and, therefore, the stops were unlawful; and the reports of admonitions purportedly given to Ramirez were not based on personal knowledge. Upon concluding his argument, counsel submitted.

The hearing officer then indicated she wanted to "reconvene and get the officer." She stated, "[i]f I need the officer, I think I will subpoena, possibly subpoena Officer Diaz. So we will – we need to reschedule with you …."

https://10-8systems.com/what-is-a-computer-aided-dispatch-cad-system-for-law-enforcement/.)

5.

The continued in-person APS hearing was set for September 12, 2019. In the interim, DMV subpoenaed Officer Van Dyke to appear at the hearing.[4]

When the APS hearing reconvened on September 12, 2019, the hearing officer notified Ramirez's counsel that DMV did subpoena Officer Van Dyke to appear in person, but that Officer Van Dyke had "contacted the support staff [of DMV] and requested to testify by phone due to some appointment that had arisen, and I – I did grant that request – for him to testify by phone."

The hearing officer inquired if there were any objections. Ramirez's counsel objected and indicated, "[t]his one is important because we have documents that we've subpoenaed that do not – that are not regularly handled by the – by the officers. And it's impossible for me to show him those documents, refresh his recollection or clarify his understandings if he isn't here to look at them. I can read them to them [*sic*], but he may or may not be able to establish whether or not these are official Department documents, whether they appear to be dealing with the exact issues involved. And I can't show them to him to have him do that, so at this point I would object."

The hearing officer overruled the objection and the in-person APS hearing proceeded with Officer Van Dyke being permitted to testify by telephone.

On September 20, 2019, the hearing officer issued an "Administrative Per Se – Refusal, Notification of Findings and Decision" (some capitalization omitted). In her findings, the hearing officer noted, among other things, Officer Van Dyke initiated the investigatory stop of Ramirez's vehicle and that Officer Reynolds subsequently made

---

[4] Although the hearing officer indicated at the first APS hearing that she might "possibly subpoena Officer Diaz," the record only indicates she subpoenaed Officer Van Dyke to appear.

In his respondent's brief, Ramirez indicated that he too "issued a subpoena to Officer Van Dyke to ensure his personal appearance at the hearing." However, Ramirez does not cite to anywhere in the administrative record where this may be confirmed, and we have not found any indication in the administrative record that Ramirez also issued a subpoena to Officer Van Dyke.

contact with Ramirez. She determined that Officer Van Dyke's decision to stop Ramirez's vehicle was reasonable and necessary to the proper discharge of Officer Van Dyke's duty, that Officer Reynolds had probable cause to contact Ramirez and "reasonable cause to believe that [Ramirez] was driving a motor vehicle while under the influence of alcohol," and that Ramirez's arrest for DUI was lawful. The hearing officer further found Officer Diaz admonished Ramirez that "his driving privilege would be suspended or revoked if he refused to complete the required testing," and that Ramirez "did refuse or fail to complete the chemical test or tests after being requested to do so by a peace officer." As a result of these determinations, DMV reimposed the suspension of Ramirez's driving privileges.

### III. The Trial Court Grants Ramirez's Petition for a Writ of Mandate

On October 18, 2019, Ramirez filed a petition for a writ of mandate seeking an order directing DMV to set aside and revoke its driver's license suspension order. Ramirez's petition was premised, in part, on his contention that, having objected to Officer Van Dyke testifying by telephone, the hearing officer was precluded by Title 13, section 115.07 of the California Code of Regulations ("CCR section 115.07") and former Government Code section 11440.30 from allowing the officer to testify telephonically.

As a result, Ramirez contended his counsel "was not able to cross examine the officer on how the vehicle description provided was entirely different than [Ramirez's] actual vehicle using tangible exhibits"; was unable "to show [Officer Van Dyke] the specific CAD logs provided in this case," including specific references in the CAD logs describing the vehicle as a " '4DR Ford Ranger Blk in color' and not a truck" which "made it nearly impossible to get the officer to admit that the car stopped … was at random" and "without a valid basis"; was unable to "thoroughly cross examine Officer Van Dyke" concerning the dispatch call, which was "weapons-related … and had nothing to do with a DUI"; and was unable to question the witness concerning alleged discrepancies, and other issues, pertaining to the sworn statements of the officer(s).

7.

DMV opposed the writ of mandate.  Among other things, DMV argued CCR section 115.07 is directory and not mandatory; that the "directory and mandatory designations do not refer to whether a particular statutory requirement is permissive or obligatory, but simply denote whether the failure to comply … will invalidate the governmental action …," quoting *In re C.T.* (2002) 100 Cal.App.4th 101, 111.  DMV argued "[i]f something is deemed directory, then noncompliance will not invalidate the action."  DMV further argued Ramirez was not prejudiced by the hearing officer's decision to allow Officer Van Dyke to testify telephonically; the investigatory stop was lawful; Ramirez displayed objective signs of intoxication; and Ramirez was properly admonished upon his refusal to submit to a chemical test.

On September 1, 2020, the hearing on Ramirez's petition for writ of mandate went forward.  In its ruling from the bench, the trial court made the following comments.

> "All right.  Counsel I am going to grant the writ petition.  The writ is granted on the procedural ground.  I'm not addressing the substantive grounds.

> "I am ordering – the writ will require the DMV to conduct a hearing.  At this point I'm not sure that there is already – there is already testimony, but I don't think that there necessarily needs to be a full blown hearing but I do think that the officer – if the officer – if [Ramirez's counsel] wants the officer there, the officer needs to be there and the error here was the DMV's failure to make that happen.  So I'm not sure what the continued hearing necessarily looks like and I'm not sure that we need to deal with that right now, but the writ is on the procedural ground that the – that there should have been – at a minimum if the witness was not available on that day, the witness should have been made available.  The matter should have been continued to another day.  However it was dealt with – but that's what should have happened so I am granting the writ petition on that basis."

The court then directed Ramirez's counsel to prepare the judgment that ultimately issued.  The minute order that issued read, in relevant part:  "The Court makes the following findings and orders:  [¶]  Writ of mandate is granted on procedural grounds.  [¶] … [¶] [Ramirez's counsel] to prepare Order and Judgment."

Judgment was entered on October 19, 2020. The judgment itself does not reflect the basis of the trial court's decision and only provides, in relevant part: "Petitioner's Writ of Mandate is granted …." Notice of entry of the judgment was served and filed on January 27, 2021. On March 26, 2021, DMV timely appealed.

## DISCUSSION

### I.      DMV Articulates the Issues It Contends are Presented on Appeal

DMV contends the issues presented on appeal are whether the trial court erred in overturning the suspension of Ramirez's driver's license (1) "by applying [former] Government Code section 11440.30,[5] which is the section that governs telephonic hearings under the APA, when [former] section 11440.30 does not apply to DMV APS hearings"; (2) "because noncompliance with [CCR ]section 115.07, which is directory rather than mandatory in nature, does not invalidate the suspension of Ramirez's driver's license"; (3) "because Ramirez was provided a meaningful hearing and was not prejudiced"; (4) "when the evidence established all the elements of a refusal case"; and (5) "even if the DMV erroneously permitted telephonic testimony, the trial court should have remanded the matter back to the DMV for further hearing."

### II.      Standard of Review

DMV argues "[t]his case involves the interpretation and construction of [CCR] section 115.07" and that such matters present a question of law upon which this court should exercise independent judgment. Thus, DMV contends the standard of review is de novo.

Ramirez agrees, in part, noting that the facts are not in dispute and that "insofar as the Court is required to interpret a statute or regulation the review is de novo." In that regard, Ramirez argues that, if this court determines that either CCR section 115.07 or Government Code section 11440.30 is mandatory, then this court must affirm the

---

[5] Effective January 1, 2022, Government Code section 11440.3 was amended. See footnote 6, *post*. The newly amended law is not at issue on appeal.

judgment "because there is no dispute … DMV conducted the APS hearing over [Ramirez's] objection."

We agree the interpretation of former Government Code section 11440.30 and CCR section 115.07 present questions of law and our review of the issue is de novo. (*Gann v. Acosta* (2022) 76 Cal.App.5th 347, 354; *Talley v. County of Fresno* (2020) 51 Cal.App.5th 1060, 1070; *Spanish Speaking Citizens' Foundation, Inc. v. Low* (2000) 85 Cal.App.4th 1179, 1214.)

### III. Former Government Code Section 11440.30 Applied to Ramirez's DMV Driver's License Suspension Hearing

The parties disagree as to whether former Government Code section 11440.30,[6] a provision of the Administrative Procedure Act (APA) applied to Ramirez's APS hearing.

---

[6] Effective January 1, 2022, Government Code section 11440.3 was amended. Subdivision (a) of the statute remained the same as its predecessor statute. Subdivision (b) was amended, and a subdivision (c) was added. Those amended subsections now provide:

"(b)(1) Except as provided in paragraph (2), the presiding officer may not conduct all of a hearing by telephone, television, or other electronic means if a party objects.

"[¶] (2) If a party objects pursuant to paragraph (1) to a hearing being conducted by electronic means, the presiding officer shall consider the objections and may, in the presiding officer's discretion, structure the hearing to address the party's specific objections and may require the presiding officer, parties, and witnesses, or a subset of parties and witnesses based on the specific objections, to be present in a physical location during all or part of the hearing.

"[¶] (c) Subdivision (b) is not a limitation on the presiding officer transmitting the hearing by telephone, television, or other electronic means or receiving comments via electronic means from participants who are not parties or witnesses." (Gov. Code § 11440.30.)

These provisions are not at issue in this appeal.

10.

We conclude former Government Code section 11440.30 did apply to Ramirez's APS hearing.

At the time of the APS hearing, Government Code section 11440.30 provided:

"(a) The presiding officer may conduct all or part of a hearing by telephone, television, or other electronic means if each participant in the hearing has an opportunity to participate in and to hear the entire proceeding while it is taking place and to observe exhibits.

(b) The presiding officer may not conduct all or part of a hearing by telephone, television, or other electronic means if a party objects."

In arguing their respective positions, both parties cite to different subdivisions of Government Code section 11501. Government Code section 11501 provides:

"(a) This chapter [concerning administrative adjudications by formal hearing] applies to any agency as determined by the statutes relating to that agency. [¶] (b) This chapter applies to an adjudicative proceeding of an agency created on or after July 1, 1997, unless the statutes relating to the proceeding provide otherwise. [¶] (c) Chapter 4.5 (commencing with Section 11400) applies to an adjudicative proceeding required to be conducted under this chapter, unless the statutes relating to the proceeding provide otherwise."

Government Code section 11501 is a part of Chapter 5 of Part 1 of Division 3 of Title 2 of the Government Code. (We refer to the provisions of said Chapter 5 (commencing with Gov. Code, § 11500) as the "Chapter 5 provisions.")

## A.    *The Parties' Contentions*

DMV argues that "it is settled that DMV administrative hearings are specified within the Vehicle Code at sections 14100 – 14112, rather than the APA," citing *Serenko v. Bright* (1968) 263 Cal.App.2d 682, 689 (*Serenko*), and contends "[t]he APA applies only to matters not covered by the DMV's statutory scheme." DMV relies on subdivision (a) of Vehicle Code section 14112 which provides, "[a]ll matters in a hearing not covered by this chapter shall be governed, as far as applicable, by Chapter 5

11.

(commencing with Section 11500) of Part 1 of Division 3 of Title 2 of the Government Code[]"—i.e., the Chapter 5 provisions.

DMV argues "California Code of Regulations[, title 13,] sections 115.01 through 115.10 are made applicable to Vehicle Code sections 14100 through 14112 by section 115.01[]"[7] and "[b]ecause [CCR] section 115.07 specifically provides and addresses the procedure for telephonic hearings, the APA does not apply." DMV further argues, "even where portions of the APA are incorporated to govern matters that are not specifically addressed in the Vehicle Code and its regulations, only [the Chapter 5 provisions] are incorporated."

Somewhat inconsistent with its position that only the Chapter 5 provisions of the APA apply to APS hearings, DMV cites to a provision of the APA that is not contained within the Chapter 5 provisions, i.e., Government Code section 11415.10 which provides:

> "(a) The governing procedure by which an agency conducts an adjudicative proceeding is determined by the statutes and regulations applicable to that proceeding. If no other governing procedure is provided by statute or regulation, an agency may conduct an adjudicative proceeding under the administrative adjudication provisions of the Administrative Procedure Act."

However, that same statute also provides, at subdivision (b), "[t]his chapter [i.e., the Chapter 4.5 provisions] supplements the governing procedure by which an agency conducts an adjudicative proceeding." (Gov. Code, § 11415.10, subd. (b).)

In opposition to DMV's argument, Ramirez contends DMV is overlooking subdivision (c) of Government Code section 11501, which provides, "Chapter 4.5 (commencing with [Government Code s]ection 11400) applies to an adjudicative proceeding required to be conducted under this chapter, *unless the statutes relating to the*

---

[7] California Code of Regulations, title 13, section 115.01 provides: "Section 115.01 through 115.10 of this article are applicable to hearings conducted before the department pursuant to [Vehicle Code sections 14100 through 14112]."

12.

*proceeding provide otherwise*." (Italics added.) (Hereafter, the provisions of said Chapter 4.5 are referred to as the "Chapter 4.5 provisions.")

Ramirez notes, "[p]rocedures for telephonic hearings are not specified [in Vehicle Code sections 14100 through 14112]. Because telephonic hearings are not 'governed' by the Vehicle Code, … , telephonic hearings are governed by [now former] Government Code section 11440.30, made applicable by subdivision (a), of Vehicle Code section 14112, and subdivision (c), of Government Code section 11501."

In its reply brief, DMV does not address Ramirez's counterargument nor subdivision (c) of Government Code section 11501. It merely reiterates its original argument.

For the reasons stated below, we agree with Ramirez and conclude that former Government Code section 11440.30 did apply to Ramirez's DMV driver's license suspension hearing.

### B. *Under Government Code Section 11501, Subdivision (c), the Chapter 4.5 Provisions (Including Gov. Code, § 11440.30) Apply to APS Hearings Unless Applicable Vehicle Code Statutes Provide Otherwise*

There is no dispute as to the general applicability of Government Code section 11501 to the case before us. DMV concedes "[t]he APA applies … to matters not covered by the DMV's statutory scheme," citing Vehicle Code section 14112, subdivision (a). Vehicle Code section 14112, subdivision (a) provides: "All matters in a hearing not covered by this chapter shall be governed, as far as applicable, by [the Chapter 5 provisions]."

Subdivision (c) of Government Code section 11501, a statute within the Chapter 5 provisions, is straightforward. It provides, "[the Chapter 4.5 provisions] appl[y] to an adjudicative proceeding required to be conducted under this chapter, unless the statutes relating to the proceeding provide otherwise." Thus, a review of Vehicle Code sections 14100 through 14112 (which DMV concedes relate to DMV administrative

13.

hearings) is necessary to determine whether they "provide otherwise" – i.e., whether they provide that the Chapter 4.5 provisions do *not* apply.

### C. *A Review of Vehicle Code Sections 14100 Through 14112 Reveals, With Limited Exceptions Not Relevant Here, the Chapter 4.5 Provisions (Including Gov. Code, § 11440.30) Apply to APS Hearings*

A review of Vehicle Code sections 14100 through 14112 reveals only two provisions that expressly reference a statute within the Chapter 4.5 provisions. First, subdivision (b) of Vehicle Code section 14104.5 provides: "Notwithstanding Section 11450.20 of the Government Code, subpoenas and subpoenas duces tecum issued in conjunction with the hearings may be served by first-class mail." Second, subdivision (b) of Vehicle Code section 14112 provides: "Subdivision (a) of Section 11425.30 of the Government Code does not apply to a proceeding for issuance, denial, revocation, or suspension of a driver's license pursuant to this division."

Several observations are worth making following our review of Vehicle Code sections 14100 through 14112: (1) None of these statutes provide contrary to the provisions of former Government Code section 11440.30 concerning telephonic hearings; (2) Neither of the Government Code statutes referenced in Vehicle Code sections 14104.5 and 14112 concern whether a hearing officer may allow telephonic testimony over the objection of a party; and (3) the fact Vehicle Code sections 14104.5 and 14112 expressly mention (and provide exceptions to) specific Chapter 4.5 provisions is indicative of a recognition that the Chapter 4.5 provisions otherwise do apply. It would have been unnecessary for the Legislature to enact exceptions in the Vehicle Code to specific statutes within the Chapter 4.5 provisions of the APA if those provisions did not generally apply.

In *Serenko*, relied upon by DMV, the court noted, "[t]he Administrative Procedure Act is a general law relating to administrative procedure in hearings and by established precedent such regulations must yield to special statute where a variance exists. Hearings

14.

before the [DMV] are controlled by the provisions of Vehicle Code section 13353 itself [concerning chemical blood, breath, or urine tests], and the [DMV's] hearing procedures are specified within the Vehicle Code (§§ 14100–14112) rather than the [APA] [citation].… The Vehicle Code provisions describe a comprehensive system for the conduct of formal and informal hearings, and the application of the [APA] is limited *to those matters not covered* by the Vehicle Code provisions [citation]." (*Serenko*, *supra*, 263 Cal.App.2d at p. 689, italics added.)

As we have noted above, the applicable Vehicle Code provisions do not cover procedures for telephonic hearings. Moreover, DMV has not identified any "special statute where a variance exists" between the applicable Vehicle Code statutes and former Government Code section 11440.30 and we have not found any. (*Serenko*, *supra*, 263 Cal.App.2d at p. 689.)

We reject DMV's contention that "even where portions of the APA are incorporated to govern matters that are not specifically addressed in the Vehicle Code and its regulations, only Government Code section 11500 et seq. of the APA are incorporated," citing Vehicle Code section 14112, subdivision (a). Vehicle Code section 14112, subdivision (a) merely provides that "[a]ll matters in a hearing not covered by this chapter shall be governed, *as far as applicable*, by [the Chapter 5 provisions]." (Italics added.) Our review of said Chapter 5 provisions do not reveal any statutes that address whether an adjudicative hearing may be conducted telephonically over the objection of a party. Thus, the applicability of the Chapter 5 provisions does not conflict in any way with former Government Code section 11440.30.

In summary, we conclude former Government Code section 11440.30 was applicable to Ramirez's DMV driver's license suspension hearing. Said former statute is fully consistent with other relevant statutes, including, without limitation, Vehicle Code sections 14100 through 14112 and Government Code section 11501.

15.

## IV. Former Government Code Section 11440.30 and CCR Section 115.07 Were Not Merely Directory

DMV acknowledges the hearing officer did not adhere to CCR section 115.07 when she permitted Officer Van Dyke to testify by telephone over Ramirez's objection. DMV argues, however, that the "violation did not warrant reversal of Ramirez's driver's license suspension because [CCR] section 115.07 is directory and provides no consequence for noncompliance."  We conclude, however, that both CCR section 115.07 and former Government Code section 11440.30 were mandatory and not merely directory.

### A. *CCR Section 115.07 was Promulgated Under the Chapter 4.5 Provisions to Implement, Interpret, or Make Specific Government Code Section 11440.30*

Notably, a review of the Proposed Action on Regulations that led to the adoption of CCR section 115.07 demonstrates it was promulgated, in part, under the authority of Government Code section 11400.20 (also a part of the Chapter 4.5 provisions). (2014 Ca. Reg. Text 366554 (NS).)  The notice by which CCR section 115.07 was proposed as a regulation by the DMV states, in relevant part "[t]he department proposes to adopt this regulation under the authority granted by … Government Code section 11400.20, in order to implement, interpret, or make specific … Government Code section[] 11440.30 …."  (2014 Ca. Reg. Text 36654 (NS).)

Thus, DMV promulgated CCR section 115.07 to make certain Government Code section 11440.30 was implemented by DMV hearing officers.  Their purposes are the same and it is no coincidence that there is not only similarity but near identity between subdivision (b) of CCR section 115.07 which reads, "[t]he hearing officer shall not conduct all or part of a hearing by telephone, television, or other electronic means, if a party objects[,]" and subdivision (b) of former Government Code section 11440.30 which reads, "[t]he presiding officer may not conduct all or part of a hearing by telephone, television, or other electronic means if a party objects."

16.

DMV acknowledges the hearing officer did not adhere to CCR section 115.07. That acknowledgment is tantamount to an acknowledgement the hearing officer also did not adhere to former Government Code section 11440.30.

### B.     *The Nature of the Mandatory – Directory Distinction*

"[T]he mandatory-directory distinction … must not be confused with the distinction between mandatory and permissive provisions in a statute.  The two dichotomies are not the same …." (*Galbiso v. Orosi Public Utility Dist.* (2010) 182 Cal.App.4th 652, 664.)  "Traditionally, the question of whether a public official's failure to comply with a statutory procedure should have the effect of invalidating a subsequent governmental action has been characterized as a question of whether the statute should be accorded 'mandatory' or 'directory' effect.  If the failure is determined to have an invalidating effect, the statute is said to be mandatory; if the failure is determined not to invalidate subsequent action, the statute is said to be directory." (*People v. McGee* (1977) 19 Cal.3d 948, 958 (*McGee*), superseded by statute on unrelated grounds in *People v. Preston* (1996) 43 Cal.App.4th 450, 461.)

In the context of whether a statute or regulation is considered mandatory or permissive, " 'the term "mandatory" refers to an obligatory [procedure] which a governmental entity is required to [follow] as opposed to a permissive [procedure] which a governmental entity may [follow] or not as it chooses.  By contrast, the "directory" or "mandatory" designation does not refer to whether a particular statutory requirement is "permissive" or "obligatory," but instead simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates.' " (*McGee*, *supra*, 19 Cal.3d at pp. 958–959.)

17.

**C.** *Cases Relied Upon by DMV Acknowledge that Legislative Intent and Purpose are Important Considerations in Determining Whether a Statutory Requirement is Mandatory or Directory*

DMV contends, "[w]hen a statute does not provide any consequence for noncompliance, the language should be considered directory rather than mandatory[,]" citing *In re C.T.*, *supra*, 100 Cal.App.4th at p. 111 and *Spitze v. Zolin* (1996) 48 Cal.App.4th 1920, 1927–1928 (*Spitze*). Ramirez contends "neither these cases, nor the cases they relied on to reach their conclusion, addressed the issue before this [c]ourt."

In *Spitze*, the court was faced with the question of whether forensic laboratories' failure to timely send test results for blood alcohol content to the DMV renders the results inadmissible in driver's license suspension hearings. (*Spitze*, *supra*, 48 Cal.App.4th at p. 1923–1924.) At issue was Vehicle Code section 23157 which read, in relevant part, " '… If the person submitted to a blood or urine test, the peace officer shall forward the results immediately to the appropriate forensic laboratory. The forensic laboratory *shall forward the results of the chemical tests to the department within 15 calendar days of the date of the arrest*.' " (*Id*. at pp. 1923–1924, citing former Veh. Code, § 23157, subd. (g), italics added in original.) Relying on the analytical standards articulated in *California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1209–1210 (*CCPOA*), the *Spitze* court noted "no penalty or consequence [was] specified in the statute for breach of the time limit"; "the Legislature ha[d] not clearly expressed an intent that the time limit imposed upon testing laboratories be mandatory instead of directory"; and if it were to hold the provision mandatory, it would "defeat the underlying purposes sought to be achieved by the implied consent law." As a result, the *Spitze* court determined the provision was merely directory and that test results are not inadmissible if not forwarded within the required statutory time frame. (*Spitze*, at pp. 1924, 1927–1928.)

In *In re C.T.*, a father appealed a trial court order placing custody of his child with the child's mother who lived in Arkansas and terminating the California court's dependency jurisdiction over the child. (*In re C.T.*, *supra*, 100 Cal.App.4th at p. 104.)

18.

At issue was Family Code section 3424, subdivision (d) which provided: "[a] court of this state that has been asked to make a child custody determination … , upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by" a sister state with jurisdiction over the matter "shall immediately communicate with the other court." (Fam. Code, § 3424, subd. (d).) The father contended the court erred by waiting almost a month after learning the Arkansas courts had made an earlier custody determination concerning his child. (*In re C.T.*, at p. 104.) In rejecting the father's argument, the court wrote, "[w]hen a statute does not provide any consequence for noncompliance, the language should be considered directory rather than mandatory," citing *In re Charles B.* (1986) 189 Cal.App.3d 1204, 1210 and *In re Melinda J.* (1991) 234 Cal.App.3d 1413, 1419. (*In re C.T.*, at p. 111.) It noted the difference between directory and mandatory designations and, without further analysis of that particular issue, determined "the error does not warrant reversal in this case because there is no showing of prejudice." (*Ibid.*)

Ramirez notes that the aforementioned cases all relate to "whether time limits are mandatory or directory, not whether a hearing officer can ignore a substantive procedural protection" (capitalization omitted). Ramirez's point is well taken. Each of the above cases addressed whether the failure to meet certain timing deadlines should have the effect of invalidating the resultant order or judgment. The case before us does not involve the failure to meet a timing deadline.

Moreover, *Spitze* and the cases it and *In re C.T.* rely upon all recognize that it is not merely the fact of whether the statute or regulation provides a consequence for noncompliance that determines whether they should be considered directory or mandatory. Rather, the intent of the Legislature and the purpose of the statute or regulation are also necessary considerations. (*Spitze*, *supra*, 48 Cal.App.4th at pp. 1927–1928; *CCPOA*, *supra*, 10 Cal.4th at p. 1145; *In re Charles B.*, *supra*, 189 Cal.App.3d at pp. 1209–1210; *In re Melinda J.*, *supra*, 234 Cal.App.3d at p. 1419.) As stated by the

19.

California Supreme Court, "in evaluating whether a provision is to be accorded mandatory or directory effect, courts look to the purpose of the procedural requirement to determine whether invalidation is necessary to promote the statutory design." (*McGee*, *supra*, 19 Cal.3d at p. 958.) "[W]e must ask whether the purposes of the statute would be promoted or defeated if the [provision] were construed as mandatory." (*People v. Lara* (2010) 48 Cal.4th 216, 227.)

**D.** ***The Legislative Purpose of Government Code Section 11440.30 Indicates the Prohibition Against Conducting Telephonic Hearings Over the Objection of a Party is Mandatory and Not Merely Directory***

DMV notes, "[t]ypically, a requirement is deemed directory when it is designed to make proceedings orderly, systematic, and speedy and when the failure to comply does not injure the interested party[,]" citing *Skelly Estate Co. v. City and County of San Francisco* (1937) 9 Cal.2d 28, 33 (*Skelly*) and *Francis v. Superior Court of Los Angeles County* (1935) 3 Cal.2d 19, 28 (*Francis*). DMV also contends reason, practicality and common sense must be applied to the statute or regulation at issue (citing *Halbert's Lumber, Inc., v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1239), and that a court should "consider the consequences that will flow from interpreting the regulation as either directory or mandatory" (citing *Meija v. Reed* (2003) 31 Cal.4th 657, 663).

In *Skelly*, the court considered whether a tax levy increase was valid in light of the fact the city's application for the tax levy to the board of equalization was not filed within the required statutory time frame. (*Skelly*, *supra*, 9 Cal.2d at p. 31.) In determining the statutory deadline was merely directory and not mandatory, the Court wrote: " '[i]t is a well-settled rule of construction, applicable to tax statutes, that only those provisions enacted for the benefit of the taxpayer are mandatory, while provisions enacted to secure the orderly conduct of business are merely directory.' " (*Id.* at p. 33.)

In *Francis*, the Court determined that Code of Civil Procedure section 661's requirement that a " 'motion for a new trial shall be heard and determined by the judge

20.

who presided at the trial' " – absent one of the statutory exceptions, was mandatory and not directory. (*Francis*, *supra*, 3 Cal.2d at p. 27.) As the Court stated, "the very essence of this enactment is that the motion … shall be heard and determined whenever practicable by the judge who had heard the evidence … and who was therefore best prepared and qualified to pass upon the merits of the motion." (*Id*. at p. 28.) "To leave it optional with litigants to observe or disregard its provisions would defeat the very purpose and object of its enactment." (*Id*. at p. 29.) "[W]hen taken in connection with the subject matter of section 661, and the purposes to be accomplished by its enactment, we think the clear intent of the Legislature was to use it in its mandatory sense." (*Ibid*.)

It is true that "[t]he express legislative purposes of the administrative suspension procedure are: (1) to provide safety to persons using the highways by quickly suspending the driving privilege of persons who drive with excessive blood-alcohol levels; (2) to guard against erroneous deprivation by providing a prompt administrative review of the suspension; and (3) to place no restriction on the ability of a prosecutor to pursue related criminal actions." (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 847; *Lake v. Reed* (1997) 16 Cal.4th 448, 454–455; Stats. 1989, ch. 1460, § 1, pp. 6501–6502.)

However, the legislative history behind former Government Code section 11440.30, at issue here, was to provide an "Administrative Adjudication Bill of Rights" which, among other things "specifie[d] the minimum due process and public interest requirements that must be satisfied in a hearing …" (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 523 (1995–1996 Reg. Sess.) May 3, 1995.) The bill that led to the enactment of former Government Code section 11440.30 (Stats. 1995, Ch. 938 (S.B. 523), § 21) "[r]equire[d] that all state adjudicative proceedings adhere to a fundamental 'administrative adjudication bill of rights,' which would promote greater due process, fairness, accessibility, objectivity and consistency in the adjudicative proceedings." (Assem. Com. on Consumer Protections,

21.

Government Efficiency and Economic Development, Rep. on Sen. Bill No. 523 (1995–1996 Reg. Sess.) July 11, 1995, as amended: June 30, 1995.)

Thus, the legislative history of former Government Code section 11440.30 demonstrates the statute was designed, in part, to protect and enhance the due process rights of persons in administrative proceedings.  This is also fully consistent with a legislative purpose of the driver's license suspension statutes which includes protection against the erroneous deprivation of driving privileges.  (*Gikas v. Zolin*, *supra*, 6 Cal.4th at p. 847; Stats., 1989, ch. 1450, § 1, pp. 6501–6502.)

We conclude the Legislature intended former Government Code section 11440.30 to be mandatory and not merely directory.  To hold that the statute was merely optional would undermine and defeat its purpose.  Moreover, because CCR section 115.07 was adopted to implement former Government Code section 11440.30, it too was mandatory and not merely directory.

## V.    Substantial Evidence Supports an Implied Finding That Ramirez Was Prejudiced by DMV's Failure to Adhere to Former Government Code Section 11440.30

"[T]he retention of a driver's license constitutes a fundamental vested right …." (*Campbell v. Zolin* (1995) 33 Cal.App.4th 489, 493 (*Campbell*); accord *Webb v. Miller* (1986) 187 Cal.App.3d 619, 625 (*Webb*).)  In considering whether to grant a writ petition under Code of Civil Procedure section 1094.5 in cases involving the suspension of a driver's license, "the trial court must exercise its independent judgment to determine whether the weight of the evidence supported the administrative decision reached by the DMV." (*Campbell*, at p. 493; accord *Webb*, at p. 625.)

" ' "In reviewing the trial court's ruling on a writ of mandate, the appellate court is ordinarily confined to an inquiry as to whether the findings and judgment of the trial court are supported by substantial, credible and competent evidence." ' " (*Campbell*, *supra*, 33 Cal.App.4th at p. 493.)  " '[W]hen a trial court has made its own determination

on all material facts and made findings using its own independent judgment …, it will be the trial court's findings and not those of the administrative agency that will be reviewed on appeal.' " (*Webb*, *supra*, 187 Cal.App.3d at p. 625, fn. omitted in original.)

Here, the judgment did not include express findings by the trial court. However, "[t]he doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to support the judgment." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.) "In reviewing the evidence, we 'resolve all conflicts in favor of the party prevailing in the superior court and must give that party the benefit of every reasonable inference in support of the judgment.' " (*Kifle-Thompson v. State Bd. of Chiropractic Examiners* (2012) 208 Cal.App.4th 518, 523.)

An implied finding of the trial court is that Ramirez suffered prejudice when the hearing officer overruled his counsel's objection to allowing Officer Van Dyke to testify by telephone. At the APS hearing, Ramirez's counsel relied on the fact Officer Van Dyke had been subpoenaed to testify in person. He was not notified until the hearing was underway that the officer's personal attendance had been excused by the hearing officer. In objecting to the officer testifying telephonically, Ramirez's counsel indicated he had documents "not regularly handled" by officers; that it was "impossible for [counsel] to show [the officer] those documents, refresh his recollection or clarify his understandings if [the officer] isn't here to look at them"; and that the officer "may or may not be able to establish whether or not [the documents] are official [BPD] documents, [or] whether they appear to be dealing with the exact issues involved [in the case]." In his petition for writ of mandate, Ramirez argued, among other things, his counsel "was not able to cross examine the officer on how the vehicle description provided was entirely different than the [Ramirez's] actual vehicle using tangible exhibits"; "was limited in his ability to cross examine the officer by not being able to show him the specific CAD logs provided in this case"; and was hampered in his ability to adequately cross-examine the officer on several related issues.

Additionally, the trial court could infer that, because the officer was permitted to testify telephonically, his demeanor could not be observed by the hearing officer, and it would be impossible to tell whether the witness was testifying from those documents he was able to access remotely as opposed to testifying from his recollection.

Based on the evidence, the trial court could have permissibly concluded Ramirez's counsel was unfairly prejudiced in his ability to cross-examine Officer Van Dyke.

## VI. We Decline to Address Ramirez's Argument that DMV Driver's License Suspension Hearings are Unconstitutional

Ramirez contends this court should affirm the judgment because the DMV's process for conducting APS hearings is unconstitutional. In support of this contention, Ramirez notes that the Second District Court of Appeal recently held that "combining the roles of advocate and adjudicator in a single person employed by the DMV violates due process under the Fourteenth Amendment and the California constitution article I, section 7." (*California DUI Lawyers Assn. v. Department of Motor Vehicles* (2022) 77 Cal.App.5th 517, 532.) DMV contends Ramirez waived this issue by failing to raise it before the trial court. We agree.

The traditional rule is that "a party must raise an issue in the trial court if they would like appellate review." (*People v. Lowery* (2020) 43 Cal.App.5th 1046, 1054.) "While ' "[i]t is the general rule applicable in civil cases that a constitutional question must be raised at the earliest opportunity or it will be considered as waived" ' [citation], application of this principle is not automatic." (*Hale v. Morgan* (1978) 22 Cal.3d 388, 394.) "[A] new theory raising a pure question of law on undisputed facts can be raised for the first time on appeal." (*Fort Bragg Unified School Dist. v. Colonial American Casualty & Surety Co.* (2011) 194 Cal.App.4th 891, 907.) Notwithstanding, an appellate court is under no mandatory duty to consider "forfeited arguments that raise pure questions of law." (*Wittenberg v. Bornstein* (2020) 51 Cal.App.5th 556, 567.) For the

24.

reasons set forth below, we decline to exercise our discretion to consider Ramirez's argument that DMV driver's license suspension hearings are unconstitutional.

The hearing officer's dual role as advocate and adjudicator was known at the time of the administrative hearing, if not before.  (The record reveals Ramirez's counsel has had other administrative hearings pending before the DMV.)  Moreover, DMV notes this issue and similar issues have been the subject of prior case law.  (*Poland v. Department of Motor Vehicles* (1995) 34 Cal.App.4th 1128, 1134–1135 [due process challenge on ground "hearing officer cannot fairly or properly adjudicate the case because he or she is an employee of the Department and a proponent of evidence"]; see also *Southern Cal. Underground Contractors, Inc. v. City of San Diego* (2003) 108 Cal.App.4th 533, 548–549 [claims of biased tribunal "because City was both prosecutor and adjudicator"].)

Here, not only did Ramirez fail to raise the issue at the trial court level, but he also failed to raise the issue at the administrative level.  "An issue not raised at an administrative hearing … may not be raised in later judicial proceedings."  (*Southern Cal. Underground Contractors, Inc. v. City of San Diego*, *supra*, 108 Cal.App.4th at p. 549.)

In addition, the appeal in this matter was filed by DMV.  No protective cross-appeals were taken.  The new issue was first raised by Ramirez in his respondent's brief and DMV's reply brief only addresses the procedural propriety of this court addressing the issue rather than the substantive question posed by the new issue.

Consequently, we decline to address Ramirez's argument that the APS hearing process employed by DMV is unconstitutional.

**VII.  Remand to DMV is Necessary**

Because we have determined that former Government Code section 11440.30 was applicable to Ramirez's APS hearing; that said statute and its corresponding regulation, CCR section 115.07, were mandatory and not merely directory; and that substantial evidence supports an implied finding of prejudice, we conclude the trial court properly

granted Ramirez's petition for writ of mandate.  However, we note the judgment that issued does not reflect the trial court's ruling from the bench which, in essence, provided that the matter be remanded to the DMV for further proceedings.  The judgment should be modified to reflect a remand to the DMV for further proceedings.

## DISPOSITION

The "Judgment Granting Petition For Writ Of Mandate And Awarding Costs And Attorney Fees To Petitioner" (some capitalization omitted) is affirmed, and the cause is remanded to the court below, with directions to modify the judgment to provide that the matter shall thereafter be remanded to the DMV for further proceedings not inconsistent with this opinion.[8]  Costs on appeal are awarded to Ramirez.


POOCHIGIAN, Acting P. J.

WE CONCUR:


DETJEN, J.


SNAUFFER, J.

---

[8] Aside from the requirement that Officer Van Dyke be present at the continued APS hearing, and consistent with the trial court's ruling from the bench (see discussion at pages 8 through 9, *ante*), we do not attempt to provide further structure for the continued hearing.

Filed 3/8/23

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| KEVIN RAMIREZ,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>THE SUPERIOR COURT OF KERN COUNTY,<br><br>  Defendant and Respondent;<br><br>DEPARTMENT OF MOTOR VEHICLES,<br><br>  Real Party in Interest and Appellant. | F082588<br><br>(Kern Super. Ct.<br>No. BCV-19-102984)<br><br><br>**ORDER GRANTING REQUEST<br>FOR PUBLICATION** |

As the nonpublished opinion filed on February 9, 2023, in the above entitled matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c)(2), it is ordered that the opinion be certified for publication in the Official Reports.


POOCHIGIAN, Acting P. J.

WE CONCUR:



DETJEN, J.



SNAUFFER, J.